Please rise. The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, Oyez, Oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to draw an eye and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Thank you. You can be seated. Mr. Klamaski, did I say that right? Yes. Or close enough? Your Honor. Your Honor, good morning. Good morning. This is a motion, this is brought before you as a motion to dismiss. Karen Greene need only approve that short, plain statement of her claim, showing she's entitled to relief, and that's what she did. The facts are clear that Harris was a joint employer of Ms. Harris and Ms. Greene. Ms. Greene was hired by the Urist Corporation to clean the Columbia, Maryland offices of the Harris Corporation in accordance with the terms of a contract between those two companies. Ms. Greene, who previously had a long-standing contract to clean the Harris offices, was offered the job by Urist and went to work as required by the terms of the contract. Mr. Daniel Pierce, the manager of Harris' office in Columbia, Maryland, when he saw her, he knew who she was, he ordered her removed from the premises. He provided as reason for his action that Ms. Greene had been banned from the Harris offices. He stated that Ms. Greene had rifled his desk and cursed him. He also claimed that for no apparent purpose that her cleaning contract with Harris was too expensive, implying she was overcharging the company. How does one become a joint employer if the duration of Harris' stay, I mean of Greene's stay, was as short as it was and there appeared any indicia of an employment relationship present? Well, this is an interesting part of this case. There is a contract. It states what Harris' opportunities for control are in that contract. If there was no supervision of Harris, you know, we said in these cases the right to control is crucial, but Harris never sought to exercise its right to control. It simply said we've had an unpleasant relationship in the past and there's not going to be any employment relationship in the future. Well, the situation here is that when Ms. Greene went there, she was supervised by an employee of the Harris Corporation. It said so in the contract. She was followed by that person and there was an expectation she had to be there every day as supervisor because part of the place that she was cleaning had confidential and classified material and she couldn't be there alone. She was there. She started cleaning and the reason given was a pretext for discriminatory behavior in violation of the Maryland law and now federal law that she was a lesbian and that it was gendered sexual orientation discrimination. And the fact that it happened... That would relate, wouldn't it, to whatever cause of action you have. That would relate to the December 2010 rejection, but as I understand it, that December 2010 situation is not at issue here. Well, yes, it is. That's what's at issue at this place is the fact that she came to work. She was only going to be working for Harris Corporation, not anybody else. U.S. only hired her for that because they had no other business in that area and that if she didn't work there, she would be unemployed. U.S. would have to fire her. Mr. Pierce gave reasons which were false, which were essentially, according to Harris employees, a lie. And according to the Howard County Human Rights Commission, was a lie. Their investigator and their evidence proved such, so much so that Mr. Pierce had to withdraw those reasons. Well, you might have a defamation claim, but... We do in this case. Do you have a defamation count? No. Count two includes defamation as a basis for the tortious interference with the contract. That's one of the opportunities here, and that was defamation. We state that in our complaint. The judge did not mention it below, but that's one of the basis for the claim for tortious interference on the part of Mr. Pierce. All of your evidence of pretext, none of that really matters legally. It's not of legal consequence until you establish an employment relationship, is it? Well, there was an employment relationship. Yes, but I'm concerned that maybe you're trying to bolster the employment relationship by bleeding over evidence of pretext, because certainly there's some evidence, or at least there's some allegation, that maybe he wasn't the most open-minded person in the world, did things he shouldn't have done. But is that of any legal consequence if there isn't an employment relationship? Well, there is. The contract states so. The contract says that Harris had the opportunity to control the employment. They could fire people who came from Harris. Once the employment relationship was established, but you can't just force an employment relationship on somebody. And the question I have is the normal indicia of an employee-employee relationship are things I don't find here. I mean, there was never any employment interview, for example. There's no explanation in the complaint of exactly how she was ever supervised. Really, the selection, the reason she walked in the door, had nothing to do with Harris. It was Uris that made the assignment. She was hired by Uris. She wasn't hired by Harris. And they never intended for her to be an employee of any kind. It was just the opposite. They intended for her not to be an employee. And if this establishes an employment or a joint employment relationship, it almost means any time you exchange pleasantries with somebody or whatever, you're in an employment situation. But, I mean, the common sense indicia of an employment relationship, I can't see that they're here judging from the facts as alleged in the complaint. Well, in the facts of the complaint, let's look at it very carefully for that first day she comes there. She's hired by Uris to go to Harris. She didn't go to Harris just to say hello. She went to Harris to work. The first time she cleaned the bathroom, which she had already done probably, because it's not clear what time Mr. Pierce comes in. She comes in early in the morning. He shows up. She's been working there. She has been working. The question is, that's not a volunteer job. She's there to be employed, and she's paid for that. You know, Harris gives money to Uris. Uris gives money to her. So she has started working. There is no specific time frame here, because what happens is that the reason she is terminated by Mr. Pierce is an illegal reason. It is a violation of discrimination laws, and he's going to discriminate against her immediately. He's not going to, oh, let's bygones be bygones. He immediately discriminates against her because she's a lesbian. That is in the record because that's what got her to lose the contract, if you read the complaint from 22 to 38. I agree with you. That's evidence of pretext, but it's not evidence of an employment relationship. No, but the employment relationship is the contract itself between the two companies. Is the contract in the record, the contract between Uris and? I believe it's in the record. It was there. The judge refers to it, refers to provisions of there, especially in that. Could you please tell us where in the record that is? Maybe when you get back up. I'm not sure when that got put into the record, Your Honor. I think it was attached to one of the pleadings. Okay. I'd have to find that out. But I know it was in the record because the judge referred to it. The same way the judge referred to the decision of the Howard County Human Rights Commission, got into the record where it's very clear, and this is the strange part of this case. Remember, this is a motion to dismiss. Mr. Pierce is forced to retract every reason he gave for terminating her at the Human Rights Commission. That's rather significant. He lied, and he was caught at that lie. What he did was he exercised his contractual right not to have this person clean his office premises. That's different from terminating her, isn't it? Well, no, because, first off, he gave those reasons to Uris, and that's part of the defamation issue, and he knew that Uris had no other contract to clean anything and no other work for Ms. Green. But that's not his doing. That's Uris' business plan. Well. That was their determination to hire this person to do one and only one job, wasn't it? Not really. We believe that the evidence, if we can develop it during discovery, would show that Harris clearly knew that Uris was only going to have this one contract in that area. Uris is a very big company, but did not have any contracts, as far as we can tell, in the Washington-Baltimore metropolitan area. And the fact is that when she was thrown out of the Harris offices, she had no work. Uris dismissed her. And the fact was that she was hired. She started working. She was being supervised by a Harris employee. The Harris employees were glad to see her, they said, because the place had been a pigsty essentially all summer long and all into the fall, and they were glad to see her working. And she was working. Even if it's only for four hours, it's still an employment. It's not volunteer. She got paid for it. And the point is that the company and those with the authority to hire and the rest did not intend for her to be an employee. You just can't go into something, and without the consent of the people who are responsible for hiring, and with all respect to the co-employees, they are not responsible for hiring and for establishing an employment relationship. And the minute I suppose that Mr. Pierce, whatever the history of between the two was, I don't know. But I think Judge Keenan's point is correct. There's just a lot of stuff being thrown into the well here that doesn't bear on the central question, which is how do we say it's really a rather raw form of coercion to say that somebody is an employee and force that designation onto a company, which the minute the supervisor learns that she's on the premise, they said, no, you're not going to be hired here. You're not going to be employed here. And there's no intention to hire her. As I say, it was never interviewed. The person that actually hired her and went through the screening process was Juris. And there's no explanation in the complaint of exactly how she supervised or who was supervising her. Look, it goes basically to what's almost a fundamental freedom of contract issue. You can't force somebody into a contract which they don't sign and they don't execute. An employee-employee-employer relationship is somewhat contractual. And just the way you can't force somebody into a contract, you can't force somebody into a legal relationship that they want no part of. That carries a long arm in the coercive arm of the law way too far. Harris had provided other employees during the course of that contract before Ms. Green. They all failed, not by the fact that Harris threw them out or anything like that. They just wouldn't do the job properly. Juris was in problem saying, I've got to find someone who can actually do the job well. And the employees and managers at Harris Corporation in Columbia, Maryland, told the Juris representative, get Ms. Green. The fact was that when she got there, the manager of security and the person who was supervising took their role on and proceeded to work with her. They were managers too. The fact that there was no, they knew that Juris had interviewed her and they knew she was qualified to do the work. And the contract says that the real reason, the only real reason that Harris has to terminate her job was performance. And there was no question about her ability to perform this work. So the question goes is does... All right, but then if all that is to be relevant, why weren't you litigating the December 10 rejection? When I saw this case, I'm just not clear as to why this aspect of it is even being litigated. I would have thought you might have had, perhaps under state law, some sort of wrongful discharge claim for the events that happened in 2010. And maybe there was an impermissible reason. Maybe there was not. But I don't understand why that actually wasn't the focus point. The focus point came, Ms. Green realized that she was being, she had been terminated in March of 2010, only in December when Mr. Pierce said she had been banned from the premises, which is not true. And Mr. Pierce had to withdraw that later on because there was no banning. He used that as a pretext. The question goes is can he discriminate on race, sex, gender, anything that's prohibited by law simply by the person walks in and they're black. No blacks can work in this office. So therefore, no blacks ever get hired. So every black that comes in who is fully qualified for the job can't get the job and it's an all-white office. Is that the law? That's not the law. And they're not the law here because Ms. Green started working. And the reason he gave was impermissible. That was that sexual orientation. That's impermissible. And it's against the law. And so what he did was against the law to stop her from working. It's not a hiring question. That case you did not litigate. We have that in our complaint. And our complaint should be reasonably read and according to case law here, broadly looked at when it's a Title VII type case. And that's what this is. You litigated all those things, but that's not what you chose to litigate. We believe that it's in there and the case is still alive. We are litigating that. We believe that that's the issue. That's why we concentrated on the impermissible reason Mr. Pierce gave because that was what was discovered by the Human Rights Commission, that the reasons he gave were completely false. And the reason why, based on the interviews of the employees, was that it was sexual orientation. And that was the sole reason why he had her dismissed from that office. And it's not a question of pre-hire. It's a question of what did Mr. Pierce do. Mr. Pierce fired her saying not that she wasn't qualified to do the work, but that she was banned because she rifled my desk, she cursed at me, she had a contract that was too expensive. All of those things were told to be false and that she had been banned from the office. And all of those things, that was it. Your red light has been on a couple of minutes. You've got some time remaining after we hear from Ms. Calkins. Okay. May it please the Court. The reason they're not litigating that issue, Your Honor, is because it was time barred. They were obligated to have filed any complaint with the Office of Human Rights for Howard County within six months. How long? What was the time bar? The events took place in March of 2010 and they did not file until December 2010. So instead, they are trying to do exactly what Judge Keenan is concerned about, which is trying to wrap those issues up, bring in issues of pretext in order to try and bolster an employee relationship, which there certainly is not here. The whole question that I had was, you've answered it, it was the case that wasn't litigated. I said, what are they doing doing this? That's correct, Your Honor. They could have litigated that case and they chose not to in a timely fashion, and so those events, while they may have some bearing as background, they are not the key issue to be decided here, which is with respect to specifically what occurred on the one day when Ms. Green showed up at the Harris office. One of the questions I've got and things that's bothering me is that boil down this lady's complaint is I lost my job. I got fired because of my sexual orientation. There was no other legitimate reason for me to be fired. I just find it hard to believe there's no remedy for that. Well, there is a remedy, Your Honor. Had she timely filed under the Office of Human Rights obligations to file in six months? No, I'm saying her last termination when she was thrown off the premises by Pierce and lost her job. I find it hard to believe there's no remedy if what her allegations allege are true, that she lost her job because of her sexual orientation, which in its jurisdiction is a protected ground. Yes, Your Honor. Well, several issues. Number one, she has to first demonstrate that she's an employee of Harris. She could have pursued her claim against Uris if they, in fact, did know any of the information. Your position is she doesn't have a legitimate claim against anybody? No, she potentially, if Uris actually knew about the information that Mr. Parnassi is indicating. Don't make up facts to establish liability. Under the facts of this case, she alleges, are you saying there's no liability against anybody despite the fact she lost her job because of her sexual orientation? That's right, Your Honor, because she needs to first demonstrate an employee-employer relationship, and she is unable to do that. So this is a pretty good way to set up and protect a potential employer, so to speak, like in this case, Mr. Pierce's company. Suppose it was race. Suppose, as Mr. Klimaski argues, the Harris company says, we're not going to take any blacks. Send a black over there, you're fired. Get off. You're rejected. Because of your race, there's no recourse, no protection for an employee who is rejected based on an immutable characteristic or protected ground. Any protected class is treated exactly the same, but under Title VII, as well as under the state law at issue here, there must first be an employee-employer relationship, and unless that relationship is established, there is no liability. This court recently addressed the issue in Butler and made clear to look at nine different factors to consider whether there is an employee-employer relationship. But that case presumes the person's actually working there. This particular employee never got a chance. God, as soon as they saw her, get out, get out of here. Well, the nine factors could actually occur. It's not necessarily a durational issue. Well, why are you asking us to apply Butler? I mean, Butler was a situation where the, it was a staffing agency was putting somebody to work in a BMW plant to do the exact same thing that all the BMW workers do. This is a cleaning contract. I mean, are you equating the two? Because it seems to me you're in a little bit of trouble under the Butler factors. I don't know why you're looking to Butler for support. Well, I'm looking at, too, the hybrid test, which is what this court established as the governing parameters for purposes of joint employer, and the facts of Butler, I do not believe, are the same at issue here at all. We need, this is a motion to dismiss. Mr. Klemowski is correct. We need to look at the specific allegations that are at issue, and when you look at the specific allegations at issue, there is not sufficient allegations to demonstrate an employee-employer relationship. You're saying Butler governs this case? I think Butler governs what is a joint employer relationship, which is the theory that they are bringing this case on. So I believe it is. You draw no distinction between the fact that Butler was a staffing agency situation where they put an employee in place to do everything that the BMW employees did, as opposed to simply a janitorial contract. You draw no distinction there. That's a pretty big step on your part, I think. No, I do draw, I do definitely draw a distinction because you need to go through the nine factors, and the fact that somebody is put in in Butler in a day-to-day responsibility, side-by-side, working all similarly. If you're opening the door and using Butler, she's got allegations that can put her under the ambit of Butler. She's saying that there was a supervisor, they provided the tools of work. When you look at that false Butler factor, they provided the cleaning supplies, they provided supervision on site. There are certainly some factors there that cut against you under Butler. It seems to me that that's a risky position for you to take, but that's your position. Well, Your Honor, I think the only standard that there is that this circuit has applied is the Butler standard. The test that the district court applied below is Garrett, which lays out 11 factors which were very similar to the Butler decision. But when you look at the nine factors against the allegations as specifically alleged in the complaint, there is not ample information for finding that there is an employee-employee relationship. The number one, the only aspect of Butler that there is any allegations that could suffice is under the first prong, which is authority to hire and fire. And the sole allegations that Mr. Komaske is relying on is supervision, the second Butler factor, the third Butler factor, furnishing the equipment. She wasn't there to do any of those things. There was no day-to-day supervision. They were going to furnish the equipment. They were going to give day-to-day supervision. But the test under Butler is exactly as Judge Kinson indicated, whether the punitive employer exercises substantial control. Significant control. It's the language of Butler that says that it actually has to be done rather than is agreed to be done. It uses the pot. Do you have a place in the opinion that you're relying on? Yes, Your Honor. I'm relying on page 410, where it says, the object of the joint employment doctrine is to determine whether a punitive employer exercises significant control over the same employees. It doesn't say would exercise or had a contractual right that it could exercise. The joint employment doctrine thus prevents those who effectively employ a worker from evading liability by hiding behind another entity, such as a staffing agency. Correct. But that says employ. In fact, it never occurred. The contract here, the sole evidence that they can cite to in the allegations, is that the contract purportedly allowed Harris to terminate, and it does not. The contract says that they were allowed to notify Urist. Urist was the one that made any determination. And the allegations continue that based on prior experience, Harris could not terminate. If you compare it to Butler, where in every prior circumstance, the punitive employer there actually had the ability to get things done the way they wanted, that is not what at all occurred in the allegations that are at issue here. Butler is just totally different factually from this case, isn't it? It is. That's why I'm still mystified as to why you're relying on it. Well, thank you, Your Honor. I appreciate that because you are right. We agree with you that factually it is very different from one another. It only is the closest test that the circuit has issued with respect to joint employer, which is why I am citing to it. Let me ask you this. In terms of whether there's a remedy or not, your point is that after the December 2010 rejection, there could have been a remedy to litigate that. Absolutely, Your Honor. So if there was a discrimination on the basis of sexual orientation, that could have been brought. Absolutely. Now, would there be a remedy in the sense of a failure to hire because you don't have to be an employee in order to bring a Title VII failure to hire claim? In other words, if someone just rejects you at the outset, you don't have to be an employee. And if someone rejects you on the basis of a prohibited ground under Title VII, you don't have to be an employee. That's simply a discriminatory failure to hire. But that can be litigated also. In other words, you have two avenues to litigate and two avenues to provide a remedy. One, the litigation of the December 2010 dismissal. And secondly, if they fail to bring you on board, that's a failure to hire suit. But it wasn't litigated in that manner, was it? No, that also was not litigated, Your Honor, and at this point it's time barred. I mean, most of these things are simply litigated over an employer relationship. But most of these claims are brought every day under Title VII as a discriminatory failure to hire. Why do you say that wasn't brought in this fashion? It is based on protected classes under the Howard County Code and they were not filed by appellant within the time frame required for them to be filed. I understand that, but I'm saying the second time, after Harris was working for URIST and came over to the plan, if they had simply rejected her as they did in a very peremptory manner, I don't see an employer-employee relationship. But you don't need that if you're going to bring a Title VII failure to hire account. These are brought all the time. Again, now, tell me why this was not brought as a Title VII failure to hire account. I mean, there may be some allusions to that, but tell me why you think it was not a refusal to hire claim. Because the protected class that they are bringing this under is one, sexual orientation and two, personal appearance. So they brought them under the code which recognized them as protected classes, which is Howard County. I don't think we have any cases that recognize Title VII as protecting those particular grounds. That's correct, Your Honor, there are not. Is the contract between Harris and URIST in the record? No, it is not, Your Honor. It is on – excerpts of it are quoted in the complaint. By the district court, too. Correct, and by the district court. And he was relying on pages – what are the pages at? Appendix 87. I'm sorry. He's relying on the pages that are attached to the – included in the complaint, not anywhere else. The contract is opposed. No, it is not. I did want to address one other point, which is what Appellant was raising with respect to a defamation claim. Count III is a tortious interference with business relations. He is basing the tortious interference action as an alleged defamation. The only purported defamation or lie that he's referring to is cited in paragraph 154 and 155 of the complaint, which is at Appendix 87. Specifically, the lie was saying that Harris had prohibited Green from the premises and URIST had to immediately remove her from working at the office. That, indeed, is a truthful statement, and so there is no lie whatsoever. But there was certainly no additional information that Mr. Klemowski was citing to about issues with overpayment or anything else. Allegation in paragraph 155 makes clear that Mr. Pierce did not provide URIST with any reasons from barring her from the Harris office. So, again, we do not believe that there is any claim that has been adequately stated. All of the information was in Ms. Green's personal knowledge, should she had chose to raise those allegations. This is not a situation that you should open the door to discovery and allow the plaintiff appellant now to engage in a phishing expedition. We ask that the judgment be affirmed. Thank you, Your Honor. Thank you, Ms. Calkins. Mr. Klemowski. There are several points to answer some of these things. One, the employment relationship existed simply because she was on there working and the contract and the agreement between the two companies allowed for that to happen. And so it happened as an operation of law simply. She was hired by URIST. URIST put her there. She started working, and it was unless Harris said, before you bring anybody on, we must interview them. It doesn't say that in the parts of the contract that are in the complaint. But when we go on here. But I'm a little worried about how we can, if we agree with you, how can we grant you relief if we don't know what the whole contract says? I mean, isn't what the whole contract says part of the basis of the employment relationship? We cited to certain sections of there essentially what Harris had to do. Yes. Harris's responsibility. But if you answer my question directly. I don't think we need to have the whole contract in there. We can get the whole contract. I think that Howard County had a copy of the contract. They didn't give it to us. They cited sections of the contract in their decision. And I think that's where we got it from. Now, the issue of why we didn't bring, why Ms. Green, she's not our client at that time, in March of 2000 didn't bring any claim was because she didn't see any claim. She was told the reason why she wasn't continued in her contract was too expensive. And she didn't have the resources or knowledge to know whether that was true or not. She gladly took the job when Uris offered to say, oh, good, I can go back to where I worked before. I know how to do it. I know all the people. And Uris says, great, we know that you did a good job there because all the employees told us that. The managers told us that except for Mr. Pierce. And, therefore, start working. Now, on the issue of whether she's actually an employee or not, I think to look at fair housing cases, which I think the judge put it to my mind that that's where you didn't get the house and you didn't get it because you're black or Hispanic or whatever it was, sexual orientation. And yet there's a case there. You can establish it even though there is no contract to buy the house or whatever it is. In this situation, there is a contract in a way that she is already an employee, even though it's only for a brief time, she is an employee. And she's paid those hours. What makes the employment relationship so crucial in your mind? When she walked in the front door of the Harris office. Talk about the facts of it. How does it become legally operative? It becomes legally operative when Harris said, you're hired. You're hired. We're going to pay you. Why does the employment relationship become crucial here as opposed to rejection at the outset? It's not a rejection at the outset because she was working. But if it was, yours had to tell her you can't work there. Yours didn't tell you that, which I forgot. You're not answering my question. Why do you feel like you need to establish an employment relationship? Well, we didn't need to establish an employment relationship. We believe it's there. Why did you feel you needed to argue it? Well, I guess it had to do with when we learned the facts of the situation that she had worked there for 14 years. And as she was hired by yours, that it was an employee relationship. But it doesn't have to be. If we take the Supreme Court's direction in the city of Shelby, the facts themselves should supply what we need to sustain a defense against the motion to dismiss. Independently of any employment relationship, couldn't you have brought a discriminatory refusal to hire claim? That we could. That question goes... But why didn't you? That we can plead in the alternative. The question... Where is that pleaded? We can plead that in the facts. We believe that the city of Shelby does say we can do that. Is it just a legal ground for relief? That's what I... You know, the frustration that I had was that a lot of things could have been relevant to other claims. Number one, it could have been relevant to the disputed issue over the December 2010 rejection. And if there was a refusal to hire or to bring her on board, that could have been litigated. If that refusal was a result of some prohibited ground. But instead of litigating those straightforward claims, straightforwardly in the complaint, you go with something that requires an employment relationship, which I think is just much more problematic for you. Well, Your Honor, we add facts to the case. As far as I'm concerned, maybe too many. 244 paragraphs. However... You have to sum up those facts in a way that a district court can rule on them. However, we believe that the facts in that complaint are sufficient to establish a refusal to hire. Even though we didn't say it directly, it's an alternative theory upon which the facts of the case... But normally, it's not too much to ask a count that claims don't appear just as facts in a complaint. They appear as sort of separate counts, each justifying relief. And it bothers me because this is a whole new rule of pleading that you want to set up, which is that we've got a refusal to hire claim because we put facts in the complaint. Well, no. You can put the facts in the complaint, and then you say, as a result of these facts, there's a discriminatory refusal to hire under state law, or if it's racial or gender-oriented, it could be under federal law. And that's all you needed to do, but you didn't do it. You made the focus of this whole thing an employment relationship, which is much more difficult, much more difficult. But there are remedies out there for you. There are remedies. There were remedies at two points in the road. Your Honor, in a case that's actually cited in the Butler case, which points out that when dealing with Title VII cases or discrimination cases, liberal construction is to be given to the definition of an employer. And in this case, we believe that should be the situation, that when Urist hired her, according to this agreement from the sections that we have, Harris hired her because they were joint employers, because they had divided up what their responsibilities are, and it allowed Urist to provide the employee. And Urist provided the employee, in this case Ms. Green, who was then subject to discrimination by Mr. Pierce, and she was removed from the office. But she was an employee. She was an employee of somebody. She was an employee of this agreement between these two companies. She wasn't an employee of Urist to be just an employee of Urist. She was an employee of Urist to work there at Harris. And even though it was such a short time, and I know that's the difficulty, she performed what she was to do. She was paid for those hours. It isn't just the duration. It's that other indicia are not present either. It's not just the duration. If this qualifies as an employment relationship, I think almost anything would. Well, I don't think anything would. She wasn't a volunteer. She wasn't solely under the control of Urist. In one of the cases, in I guess the Barrett case, which is a custodial case, where the custodians were going to the borough of whatever town that was, and there were different people going, cleaning that place. Nobody was supervising them and everything else, and that didn't work, even though they were employees of whatever the company was that they were hired to clean that offices. In this situation, the company that hired Ms. Green would only be putting Ms. Green at the Harris office because one of the security issues, the drug testing, they wanted to make sure that they maintained certain control over it. But she was hired just to go to Harris, nothing more. That's a unique part of this situation as opposed to the other cases. Let me tell everybody, these red lights aren't up here for fun. All right. They terminate the argument. Thank you. We're done. We'll come down to great counsel and then go into the next thing.
judges: William B. Traxler, Jr., J. Harvie Wilkinson III, Barbara Milano Keenan